

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Autoridad de los Puertos de Puerto Rico<br><br>    Peticionario<br><br>        v.<br><br>Hermandad de Empleados de Oficina, Comercio y Ramas Anexas (HEO)<br><br>    Recurrido<br><br>Negociado de Conciliación y Arbitraje; Departamento del Trabajo y Recursos Humanos | Certiorari<br><br>2012 TSPR 128<br><br>186 DPR \_\_\_\_ |

Número del Caso: CC-2009-635

Fecha: 21 de agosto de 2012

Tribunal de Apelaciones:

        Región Judicial de San Juan

Abogado de la Parte Peticionaria:

        Lcdo. Francisco Acevedo Nogueras

Abogados de la Parte Recurrida:

        Lcdo. José Carreras Rovira
        Lcdo. José A. Cartagena

Materia: Derecho Laboral – Descubrimiento de prueba en procedimiento de arbitraje obrero - patronal

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Autoridad de los Puertos de Puerto Rico | | *Certiorari* |
| Peticionario | | |
| v. | CC-2009-0635 | |
| Hermandad de Empleados de Oficina, Comercio y Ramas Anexas (HEO) | | |
| Recurrido | | |
| Negociado de Conciliación y Arbitraje; Departamento del Trabajo y Recursos Humanos | | |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 21 de agosto de 2012

> *Arbitration may or may not be a desirable substitute for trials in courts; as to that the parties must decide in each instance. But when they have adopted it, they must be content with its informalities; they may not hedge it about with those procedural limitations which it is precisely its purpose to avoid. They must content themselves with looser approximations to the enforcement of their rights than those that the law accords them, when they resort to its machinery.*[1]

Comparece ante nos la Autoridad de los Puertos de Puerto Rico (en adelante la Autoridad) y nos solicita que revoquemos una Sentencia emitida por el Tribunal de Apelaciones. En esta, el foro apelativo intermedio decretó

---

[1] Juez Learned Hand, *American Almond Prod. Co. v. Consolidated Pecan S. Co.,* 144 F.2d 448, 451 (1944).

la nulidad de un Laudo de Arbitraje bajo el fundamento de que se afectó el debido proceso de ley de una parte al negársele acceso a un Informe Pericial previo a su vista de arbitraje.

En el caso de autos debemos resolver si en el ámbito del arbitraje obrero-patronal se socava el derecho de una parte a un debido proceso de ley si no se le proveen mecanismos de descubrimiento de prueba durante las etapas del arbitraje. Ello aun cuando las partes no pactaran la disponibilidad de esos mecanismos.

Antes de atender este asunto, examinemos los hechos que generaron la controversia de autos.

I

Para el mes de agosto de 2007, un grupo de empleadas de la Autoridad comenzaron a encontrar en el parabrisas de sus automóviles una serie de notas escritas a mano firmadas bajo el seudónimo de "Ossira" y "Ossirus". Según se desprende del testimonio de una de las empleadas, estas notas contenían, *inter alia*, lenguaje sexual y provocativo dirigido a estas, al punto que una de ellas instó una Querella ante la Policía por temor a su seguridad. Entre los mensajes recibidos se incluían algunos que leían "te he amado en silencio", "algún día te amaré para…", "desde que te vi me he ilusionado contigo" y "pronto estaremos en el paraíso para amarnos". Los mensajes suscritos por el ente "Ossirus" también fueron dejados en el baño de

mujeres de la Autoridad y por debajo de la puerta del área de trabajo de las empleadas.

En aras de atender esta preocupante situación, la Autoridad contrató los servicios del señor Onofre Jusino, un perito en caligrafía y criminología. La Autoridad le proveyó al señor Jusino las notas suscritas por "Ossirus", fotos de los escritos dejados en la pared del baño de mujeres, así como escritos presentados en la solicitud de empleo de diversos empleados de la Autoridad. Luego de analizar los escritos, el señor Jusino suscribió un Informe de tres (3) páginas en el que concluyó que el autor de las referidas notas era el empleado Daniel A. Pagán Restituyo.

Ante este Informe, y conforme al procedimiento establecido en el Convenio Colectivo suscrito por la Autoridad y la Hermandad de Empleados de Oficina, Comercio y Ramas Anexas (en adelante la Hermandad), se procedió a citar al señor Pagán Restituyo para una vista administrativa en la cual se le **informó sobre los cargos que se formularon en su contra.** Durante esta vista, la Hermandad solicitó que se le produjera copia del Informe suscrito por el perito Jusino, a lo cual la Autoridad se opuso. Posterior a la vista, la Autoridad procedió a despedir al señor Pagán Restituyo, a lo cual la Hermandad respondió solicitando un arbitraje acelerado, según lo provee el Convenio Colectivo suscrito por las partes.

El arbitraje en el caso de autos se dividió en dos (2) vistas durante los meses de agosto y octubre de 2008. En estas, la Autoridad ofreció como evidencia en contra del señor Pagán Restituyo el Informe pericial **y** el testimonio del perito Jusino, así como la prueba testimonial del Oficial de Seguridad Roberto Ramos Cruz, el Director de Auditoría y Controles Administrativos José Rivera Medina, y la empleada Glorymar Rodríguez, quien había recibido algunas de las referidas notas.

Durante estas vistas la Hermandad objetó que se permitiera el testimonio pericial del señor Jusino toda vez que no se les había entregado copia de su Informe Pericial previo a la vista. El árbitro Jorge L. Torres Plaza permitió el testimonio del señor Jusino y concedió un receso para que la Hermandad pudiera obtener posesión del Informe Pericial y lo examinara previo a contrainterrogar al perito.

Posteriormente, el 24 de octubre de 2008 el árbitro Torres Plaza emitió un Laudo en el cual confirmó que el despido del señor Ayala Restituyo estuvo justificado. El árbitro consignó que la Hermandad tuvo oportunidad de contrainterrogar e impugnar el testimonio pericial del señor Jusino y no logró hacerlo. A su vez, dictaminó que dio gran peso tanto al Informe Pericial como al testimonio del perito.

Insatisfechos con el Laudo, el 24 de noviembre de 2008 la Hermandad presentó una Petición de Revisión de

Laudo de Arbitraje Laboral ante el Tribunal de Primera Instancia, Sala Superior de San Juan. La Hermandad adujo que el Laudo en controversia era nulo ya que no se le proveyó copia del Informe Pericial previo a la vista de arbitraje, lo cual tuvo el efecto de violar el debido proceso de ley del empleado despedido. El 2 de marzo de 2009 el foro de instancia confirmó la determinación del árbitro.

Aún inconforme, la Hermandad presentó un recurso de *certiorari* ante el Tribunal de Apelaciones en el cual esbozó los mismos argumentos presentados ante el Tribunal de Primera Instancia. El foro apelativo intermedio expidió el auto, y el 17 de junio de 2009 revocó la determinación del foro de instancia y declaró nulo el Laudo. El tribunal *a quo* estimó que se había violado el debido proceso de ley del empleado al no permitírsele tener acceso al Informe Pericial previo a la vista de arbitraje. Además, adujo que la breve oportunidad que se le dio en la vista para revisar el Informe no subsanó la violación constitucional, ya que ese tiempo era insuficiente para impugnar un Informe Pericial.

Insatisfechos con esa decisión, la Autoridad presentó un recurso de *certiorari* ante este Tribunal y argumentó la comisión del siguiente error:

> **Erró el Tribunal de Apelaciones al determinar que el laudo de arbitraje no fue emitido conforme a derecho, al no acceder la Autoridad a una solicitud de descubrimiento de prueba (no entregaron un informe pericial) previo a la vista de arbitraje. Como consecuencia de lo anterior,**

**se revocó la Sentencia del TPI que confirmó el Laudo, constituyendo un error tal determinación.**

Examinado el recurso presentado, el 29 de enero de 2010 acordamos expedir. Las partes han comparecido por lo cual nos corresponde resolver la controversia planteada sin trámite ulterior.

II

A.

*In limine*, el concepto del arbitraje se utiliza para demarcar al método alternativo de solución de disputas más formal que existe como alternativa al litigio tradicional. Señala el profesor Fernández Quiñones que en el arbitraje "las partes en disputa someten y presentan su caso ante un tercero neutral que está investido con la facultad de rendir una decisión". D. Fernández Quiñones, *El Arbitraje Obrero-patronal*, Colombia, Ed. Forum, 2000, pág. 9. Esta institución aspira a

> eliminar la solemnidad, los inconvenientes y dificultades del proceso judicial. También tiene como facultad imponerle un carácter excluyente al proceso judicial. Ello se deriva de que una cláusula de arbitraje es un contrato que impide a los jueces y tribunales conocer de conflictos o cuestiones litigiosas sometidas a arbitraje. D. Fernández Quiñones, *op. cit.*, pág. 10.

En el ámbito laboral, el arbitraje surge como parte del proceso de negociación colectiva el cual tiene como fin la confección de un Convenio Colectivo. En cuanto a este, hemos reiterado su trascendental importancia para el ordenamiento jurídico ya que "representa el triunfo del poder de la negociación sobre la fuerza, de la cordura y

la razón sobre la temeridad y la violencia, y de la necesidad de todos de vivir en armonía los unos con los otros". *U.I.L. de Ponce v. Dest. Serrallés, Inc.*, 116 D.P.R. 348, 352 (1985).

A esos efectos, cuando en un Convenio Colectivo se pacta someter a arbitraje las controversias que puedan surgir entre patrono y empleados, se crea un foro alterno a los tribunales, lo cual tiene el efecto de sustituir a los jueces por los árbitros. *HIETel v. PRTC*, 182 D.P.R. 451, 456 (2011); *Condado Plaza v. Asoc. Emp. Casinos P.R.*, 149 D.P.R. 347, 352 (1999). En nuestro ordenamiento se "favorece el uso de métodos alternos de solución de conflictos y con mayor particularidad el arbitraje". *Vivoni Farage v. Ortiz Carro*, 179 D.P.R. 990, 1001 (2010). En el ámbito obrero patronal se favorece el arbitraje con mayor preminencia, ya que "es un medio más apropiado que los tribunales de justicia a la hora de resolver disputas que surjan de la relación contractual entre las partes, **ya que es menos técnico, más flexible y menos oneroso**". *HIETel v. PRTC*, supra, pág. 456 (Énfasis suplido).

A su vez, "[e]s indubitado el carácter contractual que comporta la figura del arbitraje". *VDE Corporation v. F & R Contractors*, 180 D.P.R. 21, 33 (2010). Es por ello que la sustitución de foros que presume la figura del arbitraje solo puede exigirse cuando lo hayan acordado las partes. En el ámbito obrero-patronal este aspecto contractual del arbitraje tiene mayor relevancia ya que,

como vimos, es producto de la negociación colectiva. "Debe entenderse que el mismo surge como resultado de la voluntad de las partes de establecer en el convenio colectivo un mecanismo o procedimiento eficiente, que garantice la solución de disputas de forma justa". A. Acevedo Colom, *Legislación de Relaciones del Trabajo Comentada*, [S. Ed.], San Juan, 2007, pág. 227. Como parte de las negociaciones y prestaciones efectuadas por las partes se llega a un mecanismo que

> presenta una ventaja considerable para las partes si se compara con el litigio tradicional. **Se trata de un mecanismo que no está revestido de la formalidad que aplica ante los tribunales de Justicia. Las Reglas de Procedimiento Civil y Evidencia no son de aplicación en las vistas de arbitraje**, con excepción de aquellos casos en que las partes expresamente dispongan lo contrario. A. Acevedo Colom, *op. cit.*, pág. 228 (Énfasis suplido).

Por ello, no hay duda que la flexibilidad que representa el arbitraje obrero-patronal como método de solución de disputas es uno de sus atractivos principales. Hemos reconocido anteriormente que "[l]a flexibilidad que caracteriza el proceso de arbitraje se logra porque las reglas de procedimiento civil no le aplican...El propósito de esto es respetar uno de los principios básicos del arbitraje, que es la finalidad en las dilucidaciones de controversias por medio de un procedimiento más ágil y menos formal". *HIETel v. PRTC*, supra, pág. 457.

En reconocimiento de esa realidad, es principio conocido que, **en ausencia de pacto en contrario**, las Reglas de Procedimiento Civil y las de Evidencia no son de

aplicación a los procesos de arbitraje. Véase D. Fernández Quiñones, *op. cit.*, págs. 254, 729; N. Brand & M. Biren, *Discipline and Discharge in Arbitration*, Ed. A.B.A. Section of Labor and Employment Law, 2008, págs. 429-460; Elkouri & Elkorui, *How Arbitration Works*, 6ta Ed., Washington, D.C., B.M.A. Books, 2003, pág. 341.

Cónsono con lo anterior, los mecanismos de descubrimiento de prueba que proveen las Reglas de Procedimiento Civil no son exigibles en los procesos del arbitraje a no ser que exista un pacto en contrario. *HIETel v. PRTC*, supra, pág. 457. Es decir, cuando las partes pactan que no existirá descubrimiento de prueba en su proceso de arbitraje, se renuncia a los privilegios procesales que podrían disfrutar en un tribunal de justicia.[2]

La razón para esta norma es obvia. El descubrimiento de prueba en muchas ocasiones puede convertirse en un proceso complejo, el cual está al arbitrio de las partes en los pleitos judiciales y que atenta contra los fines de flexibilidad, reducción de costos y rapidez que persigue la figura del arbitraje.

B.

---

[2] Como ha explicado un Tribunal Federal de Apelaciones "[a]n arbitration hearing is not a court of law...When contracting parties stipulate that disputes will be submitted to arbitration, they relinquish the right to certain procedural niceties which are normally associated with a formal trial...One of these accoutrements is the right to pre-trial discovery." *Bush v. Burton*, 614 F.2d 389, 390 (4to Cir. 1980).

En cuanto a la revisión judicial de los laudos de arbitraje, teniendo presente la voluntad de las partes y la preminencia que se le ha reconocido al arbitraje como método alterno de solución de disputas, hemos establecido que las determinaciones de los árbitros gozarán de gran deferencia. *Condado Plaza v. Asoc. Emp. Casinos*, supra, pág. 352; *J.R.T. v. Junta Adm. Muelle Mun. de Ponce*, 122 D.P.R. 318 (1988). Esta norma de autolimitación conlleva que los tribunales no lleguen a "considerar los méritos de un laudo, independientemente de que de haber sido la controversia inicialmente resuelta a nivel judicial, la determinación final hubiese sido otra". A. Acevedo Colom, *op. cit.*, pág. 271.

Es por ello que hemos establecido que la revisión judicial de los laudos emitidos en un procedimiento de arbitraje se "limitará a las instancias en las cuales quede demostrada la existencia de fraude, conducta impropia del árbitro, falta del debido proceso de ley, ausencia de jurisdicción, omisión de resolver todas las cuestiones en disputa o que el laudo sea contrario a la política pública". *C.O.P.R. v. S.P.U.*, 181 D.P.R. 299, 328 (2011).

Esta norma de autolimitación encuentra excepción cuando las partes pactan que los laudos de arbitraje se emitirán conforme a derecho. En esas instancias, los árbitros están obligados a resolver las controversias conforme a las doctrinas legales prevalecientes y

aceptadas. *C.O.P.R. v. S.P.U.*, supra, pág. 329. Cuando exista la obligación de que los laudos se emitan conforme a derecho la revisión judicial será más incisiva por lo cual "los tribunales podrán corregir errores jurídicos en referencia al derecho aplicable". *Condado Plaza v. Asoc. Emp. Casinos P.R.*, 149 D.P.R. 347, 353 (1999).[3]

Conforme discutido, entre las instancias que permiten la revisión judicial incisiva se encuentra la falta de debido proceso de ley en el procedimiento de arbitraje. Conviene indagar de manera detenida lo que significa este principio constitucional.

C.

En su concepción abarcadora, el debido proceso de ley se refiere al "derecho de toda persona a tener un proceso justo y con todas las garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo". *Marrero Caratini v. Rodríguez Rodríguez*, 138 D.P.R. 215, 220 (1995). En nuestro ordenamiento, este principio esencial de un sistema democrático se recoge en la Sec. 7 del Art. II de la Constitución de Puerto Rico[4] y en la Quinta y Decimocuarta Enmienda de la Constitución de Estados Unidos.[5] En su sustrato, este derecho garantiza que los

---

[3] Precisamente, el Convenio Colectivo suscrito entre la Autoridad y la Hermandad establece que los Laudos deberán ser emitidos conforme a derecho. Véase Ap. de Petición de *Certiorari*, pág. 89.

[4] Art. II, Sec. 7, Const. P.R., L.P.R.A. Tomo 1, ed. 2008, pág. 296.

[5] Emdas. V y XIV, Const. EE. UU., L.P.R.A., Tomo 1, ed. 2008, págs. 189, 206.

ciudadanos no perderán su libertad o su propiedad sin la oportunidad básica de ser oído.

Este derecho fundamental se manifiesta en dos dimensiones: la sustantiva y la procesal. *Domínguez Castro et al. v. E.L.A. I*, 178 D.P.R. 1, 35 (2010). En su vertiente **sustantiva**, el debido proceso de ley representa una barrera para acciones estatales que sean arbitrarias o caprichosas que afecten los derechos fundamentales de los ciudadanos. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 D.P.R. 881, 887 (1993). Por su parte, en su vertiente propiamente **procesal**, el debido proceso de ley requiere que, de verse afectado algún derecho de propiedad o libertad de un ciudadano, este tendrá acceso a un proceso que se adherirá a los principios de justicia e imparcialidad. *Íd.* págs. 887-888.

Consecuentemente, en un procedimiento de arbitraje en el que un ciudadano está expuesto a perder su empleo no hay duda que se debe cumplir con algún tipo de debido proceso de ley. *HIETel v. PRTC*, supra, pág. 460. Como comenta el profesor Fernández Quiñones, en un procedimiento de arbitraje "pueden estar implicados derechos de rango constitucional y de carácter estatutario. Ello de suyo reclama la presencia ineludible de unos requisitos procesales que garanticen el respeto y

cumplimiento de esos derechos". D. Fernández Quiñones, *op.*

*cit.*, pág. 544.[6]

En cuanto a cuál es el debido proceso que se debe

sostener en el arbitraje obrero-patronal, comenta el

profesor más adelante:

> Si se toman en consideración las características básicas del procedimiento de arbitraje – **flexibilidad, rapidez e informalidad**-, puede inferirse que **el debido procedimiento de ley que se exige es uno que no puede estar matizado de la rigidez que particulariza una vista judicial**. Por consiguiente, la vista no se gobierna estrictamente por las reglas de evidencia...En la medida en que se proporcione a las partes la oportunidad de prepararse para hacer frente a lo que es objeto de controversia, de **estar presente** en las vistas que se celebran, de **escuchar los testimonios en su contra** y de **contrainterrogar a los testigos contrarios** y de que **el laudo se funde en la evidencia que ha desfilado ante el árbitro** se ha respetado el debido procedimiento de ley. D. Fernández Quiñones, *op. cit.*, págs. 545-546 (Énfasis suplido).

Ante esta realidad, podemos colegir que el debido

proceso de ley que se exige en un procedimiento de

arbitraje es el **mínimo necesario** que acredite una

resolución justa de la controversia. A esos efectos, y

según el profesor Fernández Quiñones, las normas del

debido proceso de ley que deben regir los procesos de

arbitraje son paralelas a las existentes en el ámbito del

Derecho Administrativo. Véase D. Fernández Quiñonez, *op.*

*cit.*, pág. 546.

En esencia, en todo proceso de arbitraje debe

cumplirse con los elementos básicos de la justicia, lo

---

[6] Obviamente, las exigencias constitucionales del debido proceso de ley no son de aplicación en instancias en las cuales entes privados decidan someter sus controversias a la adjudicación de un árbitro.

cual conlleva un trato justo e imparcial. A esos efectos, hace décadas en *S.I.U. de P.R. v. Otis Elevator Co.*, 105 D.P.R. 832 (1977), establecimos que se cumple con el debido proceso de ley en el ámbito del arbitraje obrero-patronal **si se le notifica y se coloca en conocimiento al agraviado de los cargos en su contra, se da paso a la celebración de una vista y se le da oportunidad al agraviado de someter evidencia.** *Íd.* pág. 837. Véase también D. Fernández Quiñonez, *op. cit.*, pág. 544.

III

A la luz de la discusión doctrinal anteriormente expuesta, pasamos a resolver la controversia ante nuestra consideración.

Conforme reseñamos, en el caso de autos la Hermandad solicitó que se le produjera el Informe caligráfico suscrito por el perito Onofre Jusino previo a la vista de arbitraje. No hay duda que ese petitorio debe ser considerado como una solicitud de descubrimiento de prueba, específicamente como una solicitud de producción de documentos.[7]

*Ab initio*, resulta imperativo mencionar que el Convenio Colectivo suscrito entre la Autoridad y la Hermandad **no contempla la disponibilidad de mecanismos de descubrimiento de prueba.** Como vimos, las disposiciones de

---

[7] Este mecanismo de descubrimiento de prueba "permite que los documentos y objetos en posesión de una parte, y que sean pertinentes a la solución de una controversia, puedan estar disponibles a la otra parte, de manera que se eliminen las sorpresas, se simplifiquen las cuestiones planteadas y se aligeren los procedimientos". *García Rivera et al. v. Enríquez*, 153 D.P.R. 323, 334 (2001).

un Convenio Colectivo son de naturaleza eminentemente contractual, por lo cual tiene fuerza de ley entre las partes y debe cumplirse conforme a lo establecido en este. *HIETel v. PRTC*, supra, pág. 458. Por ende, no existía razón alguna a tenor con el texto del Convenio Colectivo por la cual la Autoridad tuviera que acceder a la solicitud de producción de documentos de la Hermandad.

No obstante, la Hermandad argumenta que la ausencia de mecanismos de descubrimiento de prueba en la controversia de autos tiene el efecto de socavar el derecho a un debido proceso de ley del empleado agraviado. No le asiste la razón.

De un análisis de los autos del caso de epígrafe se desprende que todos y cada uno de los requisitos mínimos del debido proceso de ley en su vertiente procesal se cumplieron. Al empleado afectado, Daniel Pagán Restituyo, se le **notificó** sobre los cargos en su contra mediante carta del 9 de noviembre de 2007, en la cual se le citó para una vista administrativa y se le apercibió que podía asistir con un representante de la Hermandad. Posterior a esa vista, mediante carta de 7 de diciembre de 2007 se le despidió y se le **puso en conocimiento** de las razones para su despido y de las secciones del Convenio Colectivo que su conducta había infringido.

Por otro lado, en el caso de autos se celebraron **tres (3) vistas.** La vista administrativa informal se llevo a cabo el mes de noviembre de 2007 en la cual la Hermandad y

**el empleado advinieron en conocimiento de la existencia del Informe Pericial del señor Jusino.** Posteriormente se celebraron dos (2) vistas de arbitraje durante los meses de agosto y octubre de 2007, en las cuales **se le dio completa oportunidad a la Hermandad y al empleado de someter evidencia y contrainterrogar testigos**. Además, se le dio un tiempo durante la vista para que revisaran el Informe Pericial del señor Jusino **previo a su contrainterrogatorio**.

Todos estos hechos incontrovertidos demuestran que en el caso de autos se cumplió con las exigencias mínimas del debido proceso de ley según lo establecido en nuestra jurisprudencia. En ausencia de violación a ese principio, los tribunales están obligados a darle deferencia a la decisión de los árbitros, *C.O.P.R. v. S.P.U.*, supra, pág. 328, por lo cual no procede declarar la nulidad del Laudo en el caso de autos.

No obstante, el Tribunal de Apelaciones concluyó que en el caso de autos hubiera sido una gestión fútil para la Hermandad contratar otro perito calígrafo para impugnar el testimonio del señor Jusino ya que, sin acceso al Informe Pericial, "el perito contratado no tendría sobre qué documentos emitir su opinión o preparar un informe".[8] Esta conclusión especulativa -**además de ignorar el hecho que durante la vista el árbitro le concedió un término a la parte para revisar el Informe Pericial previo al**

---

[8] Sentencia del Tribunal de Apelaciones, Ap. pág. 120.

**contrainterrogatorio del señor Jusino**- pasa por alto que en nuestro ordenamiento jurídico el testimonio pericial puede estar basado en datos que lleguen al conocimiento del perito durante la vista en que este se apreste a testificar. Véase Regla 704 de Evidencia, 32 L.P.R.A. Ap. VI, R. 704.

Por otro lado, el hecho de que en el caso de autos no se le diera acceso a la Hermandad a un Informe Pericial previo a la vista de arbitraje no se traduce necesariamente a una violación al debido proceso de ley. En este Informe el perito Jusino se limita a informar sus credenciales, enumerar los documentos que la Autoridad le hizo llegar y anunciar su conclusión, sin más, de que las notas en controversia fueron escritas por el señor Pagán Restituyo. Difícilmente puede concluirse que el receso que proveyó el árbitro durante la vista de arbitraje fue insuficiente para revisar un Informe tan limitado. **Ante ese escenario, no era un esfuerzo fútil el que la Hermandad contratara su propio perito para tratar de impugnar la credibilidad del perito Jusino tanto para con su Informe, como su testimonio.**

Por otro lado, **el Informe Pericial no fue la única evidencia presentada por la Autoridad en el caso de autos.** Como hemos discutido, el hecho que el árbitro consideró que el Informe y el testimonio pericial tenían el mayor valor probatorio no tiene el efecto de convertirlo en la única prueba, ni en eliminar el resto de los testimonios

presentados. No debemos ignorar la corriente moderna en el ámbito del arbitraje obrero-patronal que les permite a los árbitros basar sus conclusiones en informes periciales de caligrafía. Se ha dicho que "[w]here the document examiner is qualified as an expert, the examiner's conclusive determination will be accorded great weight when it corroborates testimonial or other evidence presented at the hearing". N. Brand & M. Biren, *Discipline and Discharge in Arbitration*, Ed. A.B.A. Section of Labor and Employment Law, 2008, pág. 445.

Precisamente eso fue lo que ocurrió en la controversia ante nuestra consideración. El árbitro le dio un gran peso al Informe del perito Jusino ya que fue corroborado por su **testimonio** y por la evidencia circunstancial presentada en la vista. Sencillamente, la Hermandad tuvo las herramientas para impugnar el testimonio del señor Jusino y decidió no utilizarlas. Las fallas en la estrategia legal de la Hermandad no deben convertirse en un vehículo para crear una excepción innecesaria en el ámbito del arbitraje obrero-patronal que le exija a las partes someterse a las formalidades de procesos de descubrimiento de prueba aun cuando no lo hayan pactado.

En conclusión, y a tenor con el derecho aplicable, no encontramos razones para trastocar la conocida norma que el descubrimiento de prueba no es requisito inherente de los procedimientos de arbitraje. No podemos permitir que

cuando dos (2) partes han pactado que el arbitraje entre ellos será flexible y sin ataduras a las Reglas de Procedimiento Civil, y a pesar de que se cumpla con las garantías mínimas de nuestra jurisprudencia en cuanto al debido proceso de ley, el acuerdo quede bajo la eterna e impredecible nube revisora de los tribunales para encontrar violaciones al debido proceso de ley bajo excepciones que atentan contra los cimientos básicos de los métodos alternos de solución de disputas.

IV

Por todos los fundamentos antes discutidos, se revoca la Resolución emitida por el Tribunal de Apelaciones el 17 de junio de 2009. Consecuentemente, se confirma el Laudo emitido por el árbitro Jorge L. Torres Plaza el 24 de octubre de 2008.

Se dictará Sentencia de conformidad.


Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Autoridad de los Puertos de Puerto Rico<br><br>    Peticionario<br><br>        v.<br><br>Hermandad de Empleados de Oficina, Comercio y Ramas Anexas (HEO)<br><br>    Recurrido | CC-2009-0635 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 21 de agosto de 2012.

Por los fundamentos antes expuestos, los cuales se hacen formar parte íntegra de la presente Sentencia, se revoca la Resolución emitida por el Tribunal de Apelaciones el 17 de junio de 2009. Consecuentemente, se confirma el Laudo emitido por el árbitro Jorge L. Torres Plaza el 24 de octubre de 2008.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió una Opinión Disidente a la cual se unió el Juez Presidente señor Hernández Denton, la Jueza Asociada señora Fiol Matta y el Juez Asociado señor Estrella Martínez.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Autoridad de los Puertos de Puerto Rico<br><br>Peticionaria<br><br>v.<br><br>Hermandad de Empleados de Oficina, Comercio y Ramas Anexas (HEO)<br><br>Recurrido | CC-2009-0635 |

Opinión disidente emitida por la Juez Asociada señora Rodríguez Rodríguez a la que se unen el Juez Presidente señor Hernández Denton, la Jueza Asociada señora Fiol Matta y el Juez Asociado señor Estrella Martínez

San Juan, Puerto Rico, a 21 de agosto de 2012

La controversia del caso de autos invita a expresarnos sobre el derecho a descubrimiento de prueba en un procedimiento de arbitraje obrero-patronal. Particularmente, plantea la interrogante de si un empleado cesanteado tiene derecho a solicitar ver, previo a la vista de arbitraje, la única evidencia utilizada en su contra y sobre la que se fundamentó su despido. Por entender que denegar la petición del empleado lo posiciona en un estado de inadecuada defensa en violación del debido proceso de ley y en desventaja frente a la parte contraria, disentimos de la Opinión que suscribe una mayoría de este Tribunal. En consecuencia, confirmaríamos el dictamen del foro apelativo intermedio

en torno a dejar sin efecto el laudo de arbitraje emitido.

## I

Los hechos del caso de autos que motivaron el despido del señor Daniel Pagán Restituyo son los siguientes. Durante el mes de agosto de 2007 varias empleadas de la Autoridad de los Puertos (la Autoridad) comenzaron a encontrar en los parabrisas de sus respectivos automóviles notas a manuscrito firmadas con el seudónimo de "Ossira" y "Ossirus". Las referidas notas contenían las frases que transcribimos a continuación: "te he amado en silencio"; "algún día te amaré para ..."; "desde que te vi me he ilusionado contigo"; y "pronto estaremos en el paraíso para amarnos". Las notas también fueron dejadas por debajo de la puerta del área de trabajo de las empleadas, así como en el baño de damas.

Para atender el asunto, y en vista de que no se había podido identificar al autor de las notas, la Autoridad contrató los servicios del perito caligráfico Onofre Jusino. Éste examinó los expedientes de personal de la Autoridad y comparó las grafías de los empleados con aquéllas en las notas. Usando tal metodología, concluyó que el autor de las notas era Daniel Pagán Restituyo.[9]

---

[9] *Véase* Onofre Junino, *Resultados de análisis caligráficos*, Apéndice, pág. 35.

Conforme al Artículo XLIII del convenio colectivo entre la Autoridad y la Hermandad de Empleados de Oficina, Comercio y Ramas Anexas (la Hermandad),[10] el patrono procedió a notificarle al señor Pagán Restituyo la citación a una vista administrativa para informarle sobre los cargos en su contra. Durante la vista la Hermandad solicitó copia del informe pericial de Onofre Jusino, a lo que la Autoridad no accedió. Posterior a la vista, se notificó el despido y la Hermandad solicitó someter el asunto a arbitraje acelerado, según proveía el convenio colectivo.[11]

En la primera vista de arbitraje, celebrada el 31 de enero de 2008, la Hermandad cuestionó al árbitro la utilización del perito Jusino como testigo, toda vez que la Autoridad se había negado a entregar al querellante copia del informe pericial. El árbitro suspendió la vista y la señaló para otra fecha posterior sin antes resolver el asunto presentado por la Hermandad ni ordenar que la Autoridad descubriera la evidencia solicitada. Así las cosas, la vista de arbitraje se celebró el 20 de agosto de 2008. A pesar de las objeciones de la Hermandad, el árbitro autorizó la declaración del perito

---

[10] Según surge del expediente, el convenio colectivo tenía fecha de vigencia hasta el 30 de septiembre de 2007. No obstante, ambas partes acordaron extender la vigencia de dicho convenio hasta el 7 de diciembre de 2007. Apéndice, pág. 49.

[11] Resulta meritorio destacar que en el convenio colectivo se pactó que el laudo de arbitraje sería emitido **conforme a derecho**. Así también lo resaltó el árbitro. Árbitro Jorge Torres Plaza, *Laudo de Arbitraje*, Apéndice, pág. 32.

Jusino. El árbitro igual permitió un breve receso durante la vista para que el querellante y la Hermandad examinaran el informe pericial y pudieran contrainterrogar al perito.

Finalmente, el árbitro Jorge Torres Plaza del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico emitió el laudo de arbitraje el 24 de octubre de 2008 en donde confirmó la acción disciplinaria tomada por la Autoridad.[12] Se basó principalmente en que la declaración del perito Jusino "fue contundente y medular al punto de esclarecer quién fue la persona que envió los anónimos a las empleadas", además que la "Unión tuvo la oportunidad de contrarrestar la prueba presentada por la Autoridad y no logró establecer las bases para ello".[13]

_____

[12] Huelga decir que por tratarse de un procedimiento ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico, no le aplican las exigencias ni disposiciones de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.). 3 L.P.R.A. Sec. 2102. No obstante, ello no es motivo para que las entidades excluidas por la L.P.A.U. puedan encausar sus procedimientos adjudicativos irrestrictamente.

A pesar de la inaplicabilidad de la L.P.A.U. al Negociado de Conciliación y Arbitraje, éste tiene un reglamento interno que lo vincula, conocido como *Reglamento para el Orden Interno de los Servicios de Arbitraje del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos*. Reg. Núm. 6065 de 23 de diciembre de 1999. Si bien el Reglamento reconoce que en los procedimientos de arbitraje deberá prevalecer la justicia, la razonabilidad, la prontitud y la economía, en materia evidenciaria el Reglamento no abona nada pertinente a la controversia de autos. Por ello, la conclusión a la que llegamos aquí se fundamenta en consideraciones que superan dicho marco reglamentario.
[13] Apéndice, pág. 33.

Inconforme con la determinación del árbitro, la Hermandad presentó ante el Tribunal de Primera Instancia una *Petición de Revisión de Laudo de Arbitraje Laboral*. Dicho foro confirmó el laudo de arbitraje. Así, la Hermandad acudió ante el Tribunal de Apelaciones y adujo que el foro de instancia erró al confirmar el proceder del árbitro que violó su derecho al debido proceso de ley al no permitirle examinar el informe pericial previo a la vista de arbitraje.

El Tribunal de Apelaciones revocó la determinación del Tribunal de Primera Instancia tras concluir que al querellante se le violó su derecho al debido proceso de ley al no permitírsele examinar el informe pericial previo a la vista arbitral. Esto, toda vez que dicho informe fue la **única evidencia** que apuntaba a la culpabilidad del señor Pagán Restituyo, dado que no hubo ningún testigo que haya visto al querellante dejar las notas a las empleadas.[14] Finalmente, el foro apelativo intermedio sostuvo:

> No podemos escapar a la conclusión de que, al no tener la Peticionaria una copia del informe utilizado en su contra, a ésta se le redujo sustancialmente la oportunidad de localizar a algún perito que refutara el mismo, o de refutar de otra manera dicho informe. Si bien podemos plantear que nadie impidió a la parte Peticionaria contratar a un perito, esta gestión resultaba fútil, pues, el perito contratado no tendría sobre qué documentos emitir su opinión o preparar un informe, similar al que preparó el perito de la parte Recurrida, para refutar el mismo adecuadamente. Ello obstaculizó que la Peticionaria preparara su caso con prueba pericial, como lo hizo la Recurrida, lo que la colocó en una posición de desventaja al momento de contrainterrogar a los testigos y cuestionar la veracidad del informe pericial presentado en su contra. A consecuencia de lo

---

[14] *Véase* Sentencia del Tribunal de Apelaciones, Apéndice, pág. 134.

anterior, el derecho de la parte Peticionaria de presentar prueba a su favor se vio devastado.[15]

Inconforme con tal determinación, la Autoridad presentó oportunamente ante este Tribunal un recurso de *certiorari* en que señaló como único error que el foro apelativo intermedio concluyó que el laudo de arbitraje no fue emitido conforme a derecho. Atendida la *Petición de Certiorari*, el 29 de enero de 2010 expedimos el auto solicitado.

## II

El caso de autos convida a examinar varios asuntos relativos al proceso de arbitraje, específicamente el arbitraje obrero-patronal. Entre éstos, podemos destacar: (1) la naturaleza del procedimiento de arbitraje *vis à vis* al judicial; (2) el debido proceso de ley de las partes sujetas al procedimiento de arbitraje; (3) el proceso de revisión de un laudo de arbitraje; y (4) el derecho a descubrimiento de prueba en el arbitraje.

Si bien es cierto que anteriormente hemos atendido distintos aspectos en materia de arbitraje obrero-patronal, la controversia que se nos presenta ahora se inserta en un contexto muy particularizado. A saber, ¿cómo los tribunales deben atender un reclamo de descubrimiento de prueba hecho ante un árbitro cuando la prueba solicitada es la **única** utilizada para justificar el despido del empleado?

---

[15] *Id.* págs. 134-135.

Adelantamos que esta controversia nos coloca en un lugar común presente en todo el ordenamiento jurídico: el lindero entre la norma general y la excepción. Lamentamos que la Opinión que emite esta Curia en el caso de autos sea incapaz de reconocer tal distinción tan importante para el desarrollo vigoroso del Derecho.

La fricción entre la norma general y la excepción es muy conocida y la encontramos tanto en disposiciones constitucionales como estatutarias. A modo de ejemplo, la Sección 10 del Artículo II de la Constitución de Puerto Rico dispone como regla general que "[n]o se violará el derecho del pueblo a la protección ... contra registros, incautaciones y allanamientos irrazonables", mientras que como excepción preceptúa que sólo se expedirán órdenes de registro e incautaciones por mandato judicial; el Código Penal de Puerto Rico de 2004 establece una serie de excepciones englobadas bajo "causas de exclusión de responsabilidad penal" (Arts. 25-34, 33 L.P.R.A. secs. 4653-4662) y "causas de inimputabilidad" (Arts. 38-41, 33 L.P.R.A. secs. 4666-4669); el Código Civil de Puerto Rico hace lo propio, por ejemplo en el Artículo 133, 31 L.P.R.A. sec. 534, (sobre la adopción conjunta e individual); las Reglas de Evidencia de Puerto Rico establecen que no será admisible prueba de carácter del imputado, salvo que se satisfagan las excepciones de la propia Regla 404(a), 32 L.P.R.A. Ap. VI, R. 404.

No debemos olvidar que una excepción no anula la regla general, sino que es un estado de aplicación particularizada que impide incurrir en la llamada falacia del *secundum quid* o falacia de accidente o falacia del mal uso de una generalización. Esta falacia consiste "en olvidar que una regla general puede no ser aplicable en situaciones atípicas o excepcionales". Ricardo García Damborenea, "Falacia del *Secundum Quid* o falacia por mala aplicación de una regla o falacia del mal uso de una generalización", en *Diccionario de falacias*, http://perso.wanadoo.es/usoderazonweb/html/conten/arca/li stado/secu.htm#_ftn1 (última visita 28 de febrero de 2012). La aplicación de la excepción no mina la verosimilitud de la norma general, por eso se favorece su aplicación en aquellas instancias en que la rigidez de la norma general constituya un error lógico. Como sostienen Irving M. Copi y Carl Cohen:

> [A]un cuando los enunciados generales sean del todo verosímiles, debemos tener cuidado de no aplicarlos en una forma demasiado rígida a casos particulares. Las circunstancias alteran los casos, una generalización que es verdadera puede no aplicarse a un caso dado, por buenas razones que tienen que ver con las circunstancias especiales o accidentales del caso.
>
> ....
>
> En derecho, los principios que son válidos en general, en ocasiones tienen excepciones identificables como tales.

Irving M. Copi & Carl Cohen, *Introducción a la Lógica* 135 (2003).

Debemos ser conscientes de la distinción entre norma general y excepción al momento de examinar el marco jurídico concerniente y su posterior aplicación al caso de autos. Ignorar esa distinción, como realiza una mayoría de este Tribunal, corre el riesgo de que toda controversia quede subsumida dentro de una generalización inaplicable. Eso, evidentemente, incide sobre nuestra función de impartir justicia al minimizar nuestro quehacer profesional a la aplicación automática de una norma general, sin ser capaces de distinguir la aplicabilidad de una excepción. A continuación, examinaremos la controversia de autos teniendo presente la discusión anterior.

**A**

El arbitraje es un procedimiento producto de una relación contractual, *Luce & Co. v. J.R.T.*, 86 D.P.R. 425, 440 (1962), y se estima como un proceso alterno al litigio judicial, por lo que goza de características particulares ajenas a la adjudicación formal. Entre las características principales del arbitraje, se destacan: (1) representa un juicio de tipo contencioso y adjudicativo en la medida en que las partes presentan prueba al árbitro para que resuelva la controversia ante su consideración y (2) la informalidad y flexibilidad del procedimiento, puesto que no aplican las reglas formales

de evidencia ni de procedimiento civil, contrario al proceso judicial. Demetrio Fernández Quiñones, *El arbitraje obrero-patronal* 23-24 (2000).

En Puerto Rico existe una vigorosa política pública a favor del arbitraje obrero-patronal. *C.F.S.E. v. Unión de Médicos de la C.F.S.E.*, 170 D.P.R. 443, 448 (2007). Se entiende que el arbitraje es el medio menos técnico, más flexible, menos oneroso y, por tanto, más apropiado para la resolución de las controversias que emanan de la relación laboral. *Departamento de Educación v. Díaz Maldonado*, 2011 T.S.P.R. 161, 183 D.P.R. ___ (2011). Por ello, hemos expresado que "cuando se acuerda el uso del arbitraje como mecanismo para ajustar las controversias, se crea un foro sustituto a los tribunales de justicia, cuya interpretación merece gran deferencia". *C.F.S.E. v. Unión de Médicos de la C.F.S.E.*, 170 D.P.R. en la pág. 449.[16]

La deferencia que los tribunales han expresado hacia los procesos arbitrales se centra en el elemento discrecional que pulula en estos procedimientos. *Véase, e.g., United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29 (1987) (se reconoció a los árbitros amplia discreción en materia de derecho probatorio, por

---

[16] Esta Curia ha resuelto que "[l]os procedimientos de arbitraje y los laudos emitidos en el campo laboral gozan ante los tribunales de justicia de una especial deferencia por constituir el trámite ideal para resolver disputas obrero-patronales de modo rápido, cómodo, menos costoso y técnico". *J.R.T. v. Hato Rey Psychiatric Hosp.*, 119 D.P.R. 62, 68 (1987).

lo que los tribunales no podrán anular laudos de arbitraje por errores en la aplicación de normas del derecho probatorio, salvo que dichos errores hayan sido cometidos por mala fe o que fueran tan crasos que equivalgan a conducta impropia del árbitro); Fernández Quiñones, *supra*, pág. 253 (debido a la flexibilidad del proceso, los árbitros gozan de amplia discreción en materia de admisibilidad de evidencia).

Discreción es poder para decidir en una u otra forma, para escoger entre uno o varios cursos de acción. *Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 211 (1990). No obstante, hemos indicado que:

> [L]a discreción se nutre "de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". Asimismo, "no significa poder para actuar en una forma u otra, **haciendo abstracción del resto del Derecho**".

*H.I.E.T.E.L. v. P.R.T.C.*, 2011 T.S.P.R. 100, pág. 11, 182 D.P.R. ___ (2011) (énfasis suplido) (citando a *Santa Aponte v. Srio. del Senado*, 105 D.P.R. 750, 770 (1977); *Banco Popular de P.R. v. Mun. de Aguadilla*, 144 D.P.R. 651, 658 (1997)).

Por ello es importante hacer hincapié en que la discreción debe estar enmarcada dentro de los límites de nuestro sistema de derecho. Es cierto que como norma general el arbitraje tiene una marcada ventaja con relación a los procesos judiciales, pues se utilizan pocas reglas o normas procesales que limitan el ejercicio de discreción de los árbitros en el manejo de la controversia. Fernández Quiñones, *supra*, pág. 22. Ahora

bien, ello no implica que los árbitros gocen absolutamente de una licencia abierta para actuar contrario a los postulados jurídicos que sustentan las nociones básicas de justicia y equidad. Por consiguiente, a pesar de haber una marcada diferencia entre el proceso judicial y el arbitral en términos estructurales y evidenciarios, no debemos soslayar un denominador común dentro del sistema de derecho que limita a ambos procedimientos: el debido proceso de ley. Examinemos a continuación ese denominador común.

**B**

Al igual que en un procedimiento judicial, en el arbitral se deben reunir los requisitos de justicia, equidad e imparcialidad. Por tal motivo los árbitros se hallan totalmente sujetos a conducir los procedimientos bajo las garantías del debido proceso de ley. Fernández Quiñones, *supra*, pág. 213.

La Constitución de Puerto Rico dispone en su Artículo II, Sección 7, que "ninguna persona será privada de su propiedad o libertad sin un debido proceso de ley".[17] La garantía del debido proceso de ley opera en dos dimensiones distintas: la procesal y la sustantiva. La vertiente sustantiva del debido proceso de ley persigue proteger y salvaguardar los derechos fundamentales de la persona, mientras que la procesal le impone al Estado la obligación de garantizar que la

---

[17] La Constitución de Estados Unidos dispone lo propio en las Enmiendas V y XIV.

interferencia con los intereses de libertad y de propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. *Unión Independiente de Empleados de la Autoridad de Edificios Públicos v. Autoridad de Edificios Públicos*, 146 D.P.R. 611, 615-616 (1998).

El derecho a un debido proceso de ley en su vertiente procesal goza de ser uno de los pilares de nuestro ordenamiento jurídico, exigido tanto en los procedimientos judiciales como en los legislativos, administrativos y arbitrales. *Véase, e.g., Santa Aponte v. Srio. del Senado*, 105 D.P.R. 750, 764 (1977) & *Nogueras Cartagena v. Rexach Benítez*, 141 D.P.R. 470 (1996) (Sentencia) (debido proceso de ley en procedimientos legislativos); *Torres Solano v. P.R.T.C.*, 127 D.P.R. 499 (1990) (debido proceso de ley en procedimientos administrativos); *Hermandad Independiente de Empleados Telefónicos v. P.R.T.C.*, 2011 T.S.P.R. 100, en la pág. 12, 182 D.P.R. ___ (2011) ("en los procesos de arbitraje **no se puede violar la vertiente procesal del debido proceso de ley**").

En lo que respecta a los procesos de arbitraje, se ha mencionado que "[l]a naturaleza adjudicativa del arbitraje requiere que se tengan presentes unas reglas fundamentales del derecho probatorio para así garantizar un mínimo del debido proceso. Quizás de mayor relieve es la finalidad de que el juego limpio, la racionalidad y el

sentido de justicia imperen e informen el procedimiento".

Fernández Quiñones, *supra*, pág. 253.  En cuanto a estas

exigencias dentro del foro arbitral, el profesor Demetrio

Fernández indica:

> La presencia del debido proceso de ley en el procedimiento de arbitraje es crucial para su validez. Se trata de una función adjudicativa que está permeada de un interés público aun cuando acontezca dentro de un ámbito en que sus protagonistas son entes y personas particulares y privadas. ... Es insoslayable que, en la adjudicación que se efectúa, pueden estar implicados derechos de rango constitucional y de carácter estatutario. Ello de suyo reclama la presencia ineludible de unos requisitos procesales que garanticen el respeto y cumplimiento de esos derechos.
>
> Reconocido el derecho de que se le confiera a las partes algún debido proceso de ley, la pregunta de rigor es qué tipo o clase de debido proceso se debe conferir. ...
>
> Las normas que nutren el debido proceso de ley en materia de arbitraje son, a saber:
>
> > (i) Notificación y consentimiento de los cargos,
> >
> > (ii) Vista, y
> >
> > (iii) Oportunidad de someter evidencia.
>
> Además de ser justo y razonable el procedimiento. Esto último presupone que se cumplan otros requisitos que forman parte de lo que es el debido proceso de ley. Ello es **todo aquello que repugna por ser arbitrario e injusto**, que no brindó a una parte la oportunidad a confrontarse con los reclamos de la otra parte, que no hubo una adjudicación imparcial y que se negó el derecho a contrainterrogar.

Fernández Quiñonez, *supra*, pág. 544 (énfasis suplido).

Sobre los elementos que deben componer el requisito

de debido proceso de ley en la esfera arbitral, continúa

el profesor Demetrio Fernández:

> Es indiscutible que es injusto imponer un castigo sin darle a conocer al empleado las razones. **También lo es retener información y detalles relacionados con los cargos hasta que el agravio se procese, ya que se le priva al quejoso de evidencia que tenía que estar disponible al momento en que se determinó procesar el agravio.**

*Id.* pág. 214 (citando a *General Electric Co.*, 74 LA 125 (Clark 1979)) (énfasis suplido).

En Puerto Rico se reconoce el derecho y la protección a un debido proceso de ley en toda actuación en la que el Estado intervenga con un ciudadano particular. *Marrero Caratini v. Rodríguez*, 138 D.P.R. 215, 219 (1995). Ergo, en las circunstancias de un procedimiento de arbitraje donde es ineludible una adjudicación justa e imparcial y el Estado participe como ente adjudicador, vemos la importancia de garantizar un debido proceso de ley cuando el agraviado sea un empleado público, como en el caso de autos, así como en aquéllas en que no lo sea.[18] La exigencia del debido proceso de ley en medio de un **proceso adjudicativo** controlado por el Estado se inserta en la médula del procedimiento en sí, independientemente de los participantes. Esto, por razón de que el valor jurídico a proteger es el derecho de una persona a la transparencia del proceso y el concepto de justicia inherente a sí. "Private though an arbitration tribunal may be, the parties who appear before it have the right to expect that its procedures and processes

---

[18] Es de notar que estas exigencias no son aplicables para aquellas ocasiones en que partes privadas decidan contratar a un árbitro privado para la adjudicación de sus controversias.

will conform to fundamental standards of fairness which would be required in the case of governments". Robben W. Fleming, *The Labor Arbitration Process* 165-166 (1965).

### C

En todo proceso adjudicativo, sea de naturaleza judicial, administrativa o de cualquier índole, debe prevalecer el propósito de hallar la verdad y hacer justicia a las partes. *J.R.T. v. Autoridad de Comunicaciones*, 110 D.P.R. 879, 884 (1981). Basado en esa premisa teleológica de justicia y verdad, hemos señalado que el incumplimiento con el debido proceso de ley durante la vista es una de las causas de nulidad de un laudo de arbitraje. *Id.* pág. 885. En *J.R.T. v. Autoridad de Comunicaciones* señalamos que "[s]i bien la decisión sobre una cuestión de admisión de pruebas no está entre las más frecuentes causas para dejar sin efecto un laudo, si tal decisión tiene el alcance de **impedir que se conozca la verdad y se haga justicia**, equivale a una **violación del debido procedimiento de ley**". *Id.* págs. 885-886.

Este Tribunal ha adoptado la norma de autolimitación judicial de no interferir con los laudos de arbitraje, salvo que las partes hayan pactado que el laudo de arbitraje sea emitido conforme a derecho, en cuyo caso los tribunales podrán corregir errores jurídicos en

atención al derecho aplicable.[19]  En tal supuesto, la
revisión judicial de los laudos de arbitraje es análoga a
la revisión judicial de las decisiones administrativas.
*C.F.S.E. v. Unión de Médicos de la C.F.S.E.*, 170 D.P.R.
443, 449 (2007).  A pesar de tal norma de autolimitación,
esta Curia ha manifestado que en las ocasiones en que no
se pacte que el laudo sea emitido conforme a derecho, los
tribunales podrán atender una impugnación del laudo
basada en: (1) fraude, (2) conducta impropia, (3) **falta
del debido proceso de ley en la celebración de la vista**,
(4) violación de la política pública, (5) falta de
jurisdicción, y (6) que el laudo no resuelva todas las
cuestiones en controversia que se sometieron.
*Confederación de Organizadores de Puerto Rico v.
Servidores Públicos Unidos de Puerto Rico*, 181 D.P.R. 299
(2011); *J.R.T. v. New York & Porto Rico Steamship Co.*, 69
D.P.R. 782, 800 (1949).[20]

Como se puede observar, estas causales de nulidad de
un laudo constituyen excepciones a la norma general de

---

[19] El hecho de que el laudo sea emitido conforme a derecho
es con relación al derecho sustantivo laboral que se
utilizará en el procedimiento adjudicativo de arbitraje.
*C.F.S.E. v. Unión de Médicos de la C.F.S.E.*, 170 D.P.R.
en la pág. 449.
[20] "Así pues, en atención a esa deferencia, hemos
establecido que la revisión de un laudo se
circunscribirá, **cuando no se ha especificado que sea
conforme a derecho**, a la determinación de la existencia
de fraude, conducta impropia, falta del debido proceso de
ley, violación a la política pública, falta de
jurisdicción o que el laudo no resuelve todos los asuntos
en controversia". *Departamento de Educación v. Díaz
Maldonado*, 2011 T.S.P.R. 161, en la pág. 10, 183 D.P.R.
___ (2011) (énfasis suplido).

abstención que los tribunales se han impuesto en el pasado:

> Un laudo de arbitraje ocupa una posición muy similar a la de una sentencia o decreto judicial. Como regla general puede ser impugnado o anulado si existe algún defecto o insuficiencia en la sumisión o en el laudo mismo que lo invalide, o cuando el procedimiento seguido se ha desviado de manera substancial y perjudicial de las reglas que gobiernan los procedimientos por y ante árbitros. Los tribunales no se inclinan fácilmente a decretar la nulidad de un laudo de arbitraje, y no deben permitir que los mismos sean impugnados a menos que contra ellos pueda levantarse una de las objeciones antes mencionadas o que se alegue y pruebe fraude o mala conducta o la comisión de un grave y perjudicial error que equivalga a una violación del derecho a un debido procedimiento de ley.

*Ríos v. Puerto Rico Cement*, 66 D.P.R. 470, 477-478.

Conforme a lo antes descrito, independientemente de si se pactó que el laudo de arbitraje sea emitido conforme a derecho o no, podremos intervenir con éste si ha ocurrido alguna violación del debido proceso de ley durante el procedimiento de arbitraje. No obstante, previo a dicha intervención debemos realizar un examen para determinar cuál es el procedimiento exigido (*what process is due*), el que dependerá de las circunstancias presentadas. *Almonte v. Brito*, 156 D.P.R. 475, 481 (2002); *Rivera Rodríguez & Co. v. Lee Stowell*, 133 D.P.R. 881, 887-888 (1993). Para ello, veamos a continuación cuál es la norma en torno al descubrimiento de prueba en los procedimientos de arbitraje.

**D**

Al examinar cuál es la normativa referente al descubrimiento de prueba en la esfera arbitral, debemos retomar y tener presente la distinción entre la norma general y la excepción, puesto que la aplicación automática e indiscriminada de la norma general podría conducir a lo que algunos han denominado un absurdo jurídico o injusticia. *Véase* Juan Vallet de Goytisolo, *Panorama del Derecho Civil* 85-87 (2da ed., 1973). Como mencionamos anteriormente, excluir la excepción en circunstancias donde la norma general no es de aplicación, resulta en un error de lógica judicial. En la controversia presente, donde coexisten dos normas jurídicas aceptadas, debemos ponderarlas a la luz de las circunstancias del caso para luego ejercer con la mayor sensatez nuestra función adjudicadora.

Como norma general "[e]l procedimiento de arbitraje se caracteriza por su flexibilidad, rapidez e informalidad, por eso el debido proceso de ley que se exige no puede contener la rigidez que particulariza una vista judicial. Por esta razón es que no aplican **estrictamente** las reglas de evidencia". Fernández Quiñonez, *supra*, pág. 545 (énfasis suplido). Asimismo, recientemente esta Curia sostuvo que las reglas de procedimiento civil pueden servir de guías, siempre que no contradigan lo pactado en el convenio ni frustren la flexibilidad y agilidad que son inherentes al proceso de

arbitraje. *Hermandad Independiente de Empleados Telefónicos v. P.R.T.C.*, 2011 T.S.P.R. 100, en la pág. 15. La creencia generalizada es que los procedimientos de arbitraje se efectúen de manera rápida, cómoda, menos costosa y técnica. *J.R.T. v. Hato Rey Psychiatric Hosp.*, 119 D.P.R. en la pág. 68. Por eso es que generalmente, "[u]nless directed by the contract, **strict** observance of legal rules of evidence is not necessary in arbitration". Elkouri & Elkouri, *How Arbitration Works* 341 (6ta ed. 2003) (énfasis suplido).

El principio general de no permitir el descubrimiento de prueba y de no convertir el proceso de arbitraje en un procedimiento judicial, no alberga inherentemente un elemento inexpugnable que entronice su cualidad absoluta. En otras palabras, no podemos convertir el arbitraje en un procedimiento hierático ajeno a **todo** descubrimiento de prueba. Como bien señalamos, lo que no permite el procedimiento de arbitraje es la aplicación **estricta** de las reglas procesales o de evidencia. Llegar a la conclusión de excluir todo tipo de descubrimiento convertiría al procedimiento de arbitraje en arbitrario. Aunque la discreción del árbitro es una característica intrínseca del proceso en sí, tal discreción no puede estar basada en el vacío jurídico, sino dentro de los límites del derecho. *Negrón v. Sec. de Justicia*, 154 D.P.R. 79, 91 (2001).

La pregunta que se suscita en torno a esta controversia evidenciaria en el ámbito arbitral es dónde radica el límite entre lo permitido y no permitido en aras de no rayar en una violación al debido proceso de ley de las partes. Según lo esbozado, permitir todo tipo de descubrimiento es incongruente con el proceso en sí, mientras que la eliminación completa del descubrimiento de prueba constituiría una violación al debido proceso de ley exigido. La respuesta, pues, no se alberga en una solución equidistante a ambos extremos (en el centro), sino que en ánimo de preservar la naturaleza flexible e informal del proceso debemos auscultar en un área limítrofe entre la violación y la no violación del debido proceso de ley. Ahí estriba la excepción a la norma general en cuanto a la controversia de autos.

Sobre materia evidenciaria en adjudicaciones arbitrales, se ha mencionado que:

> En la medida en que se proporcione a las partes la **oportunidad de prepararse para hacer frente a lo que es objeto de controversia,** de estar presente en las vistas que se celebran, de escuchar los testimonios en su contra y de contrainterrogar a los testigos contrarios y de que el laudo se funde en la evidencia que ha desfilado ante el árbitro[,] **se ha respetado el debido procedimiento de ley.**

Fernández Quiñonez, *supra*, págs. 545-546 (énfasis suplido).

Por otra parte, Alberto Acevedo Colom añade:

> Las Reglas de Procedimiento Civil y Evidencia no son de aplicación en las vistas de arbitraje, con la excepción de aquellos casos en que las partes expresamente dispongan lo

contrario. ... En el arbitraje los árbitros disfrutan de un amplio nivel de discreción para regular el descubrimiento de prueba. Esto permite una mayor flexibilidad y agilidad en los procesos, lo que redunda en menos gastos para las partes y en una solución más rápida de la controversia, sin que eso resulte en perjuicio de la justicia.

El hecho de que las Reglas de Procedimiento Civil y Evidencia no resulten aplicables a las vistas de arbitraje, **no conlleva que el árbitro disfruta de discreción ilimitada para conducir las mismas a su discreción**. Es indispensable que a todas las partes que intervienen en un proceso de arbitraje se les garantice un debido proceso de ley. Esto conlleva lo siguiente:

a. El derecho de cada parte a conocer las alegaciones en su contra con razonable anticipación al proceso de vista.

b. El derecho a una vista.

c. El derecho de cada parte de presentar prueba a su favor.

d. El derecho de interrogar o controvertir la prueba contraria.

e. Que la persona o personas que presidan la audiencia y adjudiquen la controversia sean imparciales.

Alberto Acevedo Colom, *Legislación de relaciones del trabajo comentada* 228 (2007) (énfasis suplido).

Si las partes acordaron en el convenio colectivo que en el proceso de arbitraje aplicarán las reglas de procedimiento civil o las reglas de evidencia, entonces el árbitro deberá ceñirse a lo pactado, permitiendo un descubrimiento de evidencia completo. *Fairweather's Practice and Procedure in Labor Arbitration* 181 (Ray J. Schoonhoven ed., 4ta ed. 1999). **Ahora bien, el no pactarlo no excluye totalmente dicha normativa jurídica:**

In arbitration, formal prehearing discovery procedures are very limited. Labor arbitrators are sensitive to the need for cautious

> discovery in the collective bargaining relationship because of the potentially adverse effect that broad discovery rules could have where parties deal with each other on a daily basis.
>
> ....
>
> **This is not to say, however, that discovery is either unknown or unworkable in arbitration; quite the contrary. A free flow of information between the parties is needed to enable them to better evaluate their respective positions and perhaps avoid arbitration altogether.**

*Id.* págs. 173-174 (énfasis suplido).[21]

Como vemos, el problema surge cuando no se pacta en el convenio colectivo la utilización de las normas evidenciarias. En ese caso la doctrina estima que deberá atenderse cada caso dentro de las circunstancias y contexto que le rodeen, mas no mediante una aplicación automática de la norma general, tal cual realiza la Opinión de este Tribunal. Así apunta el profesor Demetrio Fernández:

> Muchos contratos colectivos requieren de las partes que revelen toda información pertinente durante el procedimiento de quejas o agravios. Si el contrato tiene esa disposición, una parte no podrá presentar evidencia por primera vez en la audiencia. Si

---

[21] Añade Alfred G. Feliu: "But the fact that litigation rules of procedure and evidence are not required to be followed **does not compel the conclusion that they must be ignored.** The wisdom and experience embodied in these rules have served and will continue to serve both to inform and order arbitration proceedings". Alfred G. Feliu, *Discovery in Employment Arbitration: How Much is Enough?*, ADR Currents Vol. 4, No. 1, pág. 3 (Marzo 1999) (énfasis suplido).

Como se puede observar, la Opinión mayoritaria omite mencionar sobre estas corrientes en materia arbitral, que si bien intentan mantener un espíritu de informalidad y flexibilidad del proceso, no excluyen categóricamente una petición de descubrimiento de prueba a modo de excepción.

el contrato colectivo carece de una disposición que requiera que se haga un descubrimiento total de la evidencia, se suscita la cuestión de si una parte puede presentar prueba que no fue discutida durante el procedimiento de quejas y agravios. A ese interrogante que se desdobla en otras que van a la médula de la salud del sistema – a la protección de los derechos procesales de la otra parte, al papel que desempeña el árbitro y al entendimiento que tiene del proceso – se contestó señalando que no existe una sola respuesta. Es deber del árbitro examinar a fondo las circunstancias del caso, la naturaleza de la relación y la relación de las partes entre sí para precisar la respuesta a esa interrogante.

Fernández Quiñonez, *supra*, pág. 267 (citando a Robben W. Fleming, The Labor Arbitration Process 145 (1965).

Así, al evaluar las circunstancias de cada caso, se deberá ponderar la **necesidad** que tenga la parte afectada para que dicha prueba se descubra. Según reconocen Elkouri & Elkouri al evaluar este asunto bajo disposiciones fedelares:

Certain federal agencies have a duty under the Federal Service Labor-Management Relations statute (FSLMR), similar to those imposed on private employers under the Labor Management Relations Act (LMRA), to provide union representatives with data that are reasonably available and necessary for the union to carry out its representational functions and responsibilities in connection with an employee grievance. Courts have interpreted the statute to **require a union to show a "particularized need" for the data before the employer must produce them.** The statute has also been interpreted to require the production of documents prior to an arbitration hearing, and to compel agency officials to testify at a hearing.

Elkouri & Elkouri, *How Arbitration Works* 158 (6ta ed. Suplemento 2010) (énfasis suplido).

Esto es cónsono con el proceder de otras jurisdicciones, donde los tribunales han reconocido que

aunque no se favorece el descubrimiento de prueba en los procesos de arbitraje, en **circunstancias excepcionales** debe abrirse paso a cierto descubrimiento cuando se demuestre su necesidad. *Fairweather's Practice and Procedure in Labor Arbitration*, *supra*, pág. 185 ("more recent court decisions evidence greater willingness to allow formal discovery during arbitration where exceptional circumstances exist").

La *American Arbitration Association* ha elaborado unas normas para la solución de disputas obreras, las que arrojan luz a controversias como la presente.[22] Estas normas se encuentran recogidas en el *National Rules for the Resolution of Employment Disputes*, cuya Regla 7 dispone de un examen (*test*) útil para las circunstancias como la del caso de autos. El examen que provee la Regla 7 establece que el árbitro tendrá la autoridad de permitir el descubrimiento de prueba en la medida en que lo considere "necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration". American Arbitration Association, *National Rules for the Resolution of Employment Disputes*, Regla 7, http://www.adr.org/sp.asp?id=22075#natrules (última visita 5 de marzo de 2012).

---

[22] A pesar de que las partes de la controversia de autos no pactaron la utilización de las reglas de la American Arbitration Association (A.A.A.), acudimos a éstas por ser de gran utilidad e ilustrativas en la presente adjudicación. La A.A.A. es una organización sin fines de lucro fundada en 1926 y goza de reconocida reputación por su participación en delinear estándares en materia de arbitraje y otros medios de solución alterna de disputas.

Al utilizar este examen, el árbitro Alfred Feliu sugiere que se tengan en cuenta cuatro interrogantes: (1) ¿Es probable que con la información que se quiere obtener se contribuya a descubrir **evidencia pertinente**?; (2) ¿Permitir la solicitud del descubrimiento evitará **elementos sorpresas** en la vista?; (3) ¿Permitir el descubrimiento solicitado ayudará a **agilizar el procedimiento** de arbitraje?; y (4) ¿La información que se procura es necesaria para garantizarles a las partes un **debido proceso ley y una vista justa**? Alfred G. Feliu, *Discovery in Employment Arbitration: How Much is Enough?*, ADR Currents Vol. 4, No. 1, págs. 4-5 (Marzo 1999). En fin, el espectro de descubrimiento de prueba necesario es aquél que permita alcanzar una solución eficiente y costo-efectiva, pero sin menoscabar los principios de justicia y equidad. *Id.* págs. 8-9.

Al atemperar una reclamación de descubrimiento de prueba a la luz de las interrogantes expuestas, no deberá considerarse paradójico que cualquier reclamo de descubrimiento hará infructuoso el objetivo de agilizar el procedimiento. Todo lo contrario, una evidencia reclamada que sea pertinente y evite los elementos sorpresas permitirá a la unión o al representante del quejoso decidir de antemano si desea invertir tiempo y otros recursos económicos en el proceso de arbitraje. *Fairweather's Practice and Procedure in Labor*

*Arbitration*, *supra*, pág. 176.[23]   En una circunstancia excepcional donde se amerite descubrir dicha evidencia porque se ha demostrado su necesidad, no permitirlo expondría al reclamante a una posición de desventaja al privarle de una defensa adecuada.   Por ello, entienden Elkouri & Elkouri que en circunstancias como la descrita "[a]rbitrators may overturn a party's attempt to limit disclosure of information prior to a hearing if the limitations imposed are found to be unreasonable". Elkouri & Elkouri, *supra*, pág. 158 (6ta ed. Suplemento 2010).

Con relación a esto, en *EcoLab Inc.*, 120 LA 641 (Allen, Jr., 2004), el árbitro dispuso unas guías para las circunstancias en que, previo a la vista de arbitraje, una de las partes solicitara una evidencia que esté en posesión de la parte contraria:

> Generally speaking, if documents can legitimately be submitted into the record during the arbitration hearing where Union officials are present, **then there is no reason not to supply that same information to Union officials prior to the hearing in order to expedite the proceedings and to provide the Union a "fair and reasonable" opportunity to properly prepare its case.** Of course, the Union would have an obligation to exercise discretion

---

[23] "La obligación de proveer información ha trascendido la fase de negociar el contrato y se ha exigido, también, en la fase de administrarlo.  El Tribunal Supremo federal ha respaldado la determinación de la Junta Nacional de que es una práctica ilícita de trabajo negarse a proveerle información a la unión para ayudarla a decidir si somete un agravio a tenor con los procedimientos contenidos en el convenio colectivo.  De igual manera se ha sostenido que la obligación de proveer información se extiende a la preparación de un caso para presentarlo en una audiencia de arbitraje". Fernández Quiñonez, *supra*, pág. 731.

> in the use of any such documents and information-that it be used only for the purpose of preparing a case.

*EcoLab Inc.*, 120 LA 641 (Allen, Jr., 2004) (citado en Elkouri & Elkouri, *supra*, pág. 158 (6ta ed. Suplemento 2010)) (énfasis suplido).

En resumen, enfatizamos que la **norma general** es que no hay derecho a descubrimiento de prueba en un procedimiento de arbitraje en que las partes no pactaron la utilización de las reglas evidenciarias ni de procedimiento civil. No obstante, y a modo de **excepción**, este Tribunal debería adoptar la norma de que cuando se presenten circunstancias extraordinarias se podrá descubrir sólo aquella evidencia que sea necesaria, sujeto a que la parte afectada por esa evidencia demuestre previamente las bases de su necesidad. Con ese proceder se salvaguarda el carácter flexible e informal del procedimiento de arbitraje sin menoscabar los principios fundamentales de justicia, equidad e imparcialidad que exige el debido proceso de ley.

Veamos a continuación la controversia presente a la luz de la elaboración del derecho que acabamos de realizar.

## III

Según mencionamos anteriormente, y recapitulamos, el señor Pagán Restituyo fue cesanteado por alegadamente haber dejado unas notas que constituían conducta impropia que atentaba contra la seguridad de sus compañeras de trabajo. Conforme al convenio colectivo habido entre la

Hermandad y la Autoridad, ésta celebró una vista administrativa como parte del procedimiento de quejas y agravios. Tras la notificación del despido y la insatisfacción del quejoso, la Hermandad solicitó someter el asunto ante la adjudicación de un árbitro, la que sería conforme a derecho, puesto que el convenio disponía para ello. La **única prueba** utilizada por la Autoridad para **justificar la acción disciplinaria** contra el quejoso fue un informe pericial, el mismo que tomó en consideración el árbitro durante el procedimiento de arbitraje. Ante ello, debemos evaluar si al amparo de estas circunstancias la Hermandad podía exigir el descubrimiento del informe pericial previo a la vista de arbitraje.

Como esbozáramos en la parte expositiva, ante un reclamo de descubrimiento de prueba en el foro arbitral se deberían ponderar los siguientes tres elementos: (1) la presencia de circunstancias excepcionales, (2) la necesidad de la parte que solicita el descubrimiento y (3) la no violación del derecho a un debido proceso de ley; todo ello enmarcado dentro de las exigencias ontológicas del procedimiento de arbitraje: flexibilidad, rapidez y costo-eficiencia.

Previo a entrar a evaluar esta controversia al amparo del examen anterior, hay que analizar dos asuntos preliminares. El primero es determinar la capacidad de los tribunales de revisar el laudo de arbitraje emitido.

Mencionamos que el laudo de arbitraje en la controversia ante nosotros debía ser emitido conforme a derecho, por lo que un tribunal estaría en posición de revisar el laudo con relación al derecho sustantivo laboral aplicable. *C.F.S.E. v. Unión de Médicos de la C.F.S.E.*, 170 D.P.R. 443, 449-450 (2007). No obstante, en la controversia de autos no está en disputa un derecho sustantivo laboral (como por ejemplo, la indemnización correspondiente tras un despido injustificado), sino el derecho a gozar de una adjudicación justa e imparcial mediante los procedimientos de descubrimiento de prueba. En ese tenor, no podemos caer en la conclusión simplona de que la revisión se da meramente por ser un laudo que debía emitirse conforme a derecho, sino que ésta se da principalmente a causa de la violación del debido proceso de ley exigido. Esto tiene como consecuencia que dicha violación hubiese facultado la revisión judicial tanto para aquellos laudos que sean emitidos conforme a derecho, como aquéllos en que no.

El segundo asunto a dilucidar previo a aplicar el examen anterior es si el convenio colectivo contiene alguna disposición que obligue a las partes a aplicar las reglas procesales o evidenciarias pertinentes. Después de todo, el convenio colectivo es de naturaleza contractual y lo pactado constituye ley entre las partes mientras no contravenga la ley, la moral ni el orden público. *Luce & Co. v. J.R.T.*, 86 D.P.R. en la pág. 440;

Cód. Civ. P.R. Arts. 1044 & 1207, 31 L.P.R.A. Sec. 2994 & 3372. Al examinar el expediente ante nuestra consideración, notamos que no se desprende del convenio colectivo el derecho a un descubrimiento de prueba durante el proceso de suspensión de un empleado ni la aplicación de las reglas de derecho probatorio o de procedimiento civil. La Sección 2 del Artículo XLIII de dicho convenio sólo dispone que la reunión o vista administrativa previa al arbitraje tendrá el propósito, además de informar los cargos, de que "el empleado informe de algún hecho, testigo, versión diferente, que pueda hacer variar sustancialmente los cargos imputados". Más allá de esto, no hay más disposiciones contractuales referentes al descubrimiento de prueba. Sin embargo, eso no es óbice para permitir algún descubrimiento de prueba según lo requieran las circunstancias del caso. *Véase Fairweather's Practice and Procedure in Labor Arbitration*, *supra*, págs. 173-174.

Superados estos dos asuntos preliminares, debemos entonces evaluar si hay circunstancias excepcionales en la controversia de autos que hagan necesario un descubrimiento de prueba, con tal de garantizarles a las partes una adecuada defensa y una adjudicación justa y equitativa. Sólo así se evitará crear desventaja de una parte sobre la otra en la preparación del procedimiento de arbitraje.

En la vista de arbitraje declararon el perito Jusino, Roberto Ramos Cruz (oficial de Seguridad Interna), José M. Rivera Medina (director de Auditoría y Controles Administrativos) y una de las empleadas afectadas por las notas que dieron paso a la controversia de autos.[24] Además, se presentaron documentos como exhibit, los que contenían información como: la carta de despido enviada por la Autoridad, el convenio colectivo, el formulario de querella presentado ante la Oficina de Auditoría de la Autoridad, entre otros. A pesar de ello, los documentos presentados como exhibit, las declaraciones del oficial de seguridad, del director de Auditoría y de la empleada no fueron la evidencia **que demostró la responsabilidad del señor Pagán Restituyo**, ya que dichos testimonios y documentos **sólo apuntaron** a que en efecto ciertas empleadas recibieron unas notas que provocaron un ambiente inseguro y hostil en el empleo, y a que la Autoridad implementó un plan de vigilancia en el estacionamiento tras las quejas de las empleadas.[25] La

---

[24] Los testimonios de las otras empleadas afectadas fueron estipulados por las partes. El testimonio del oficial de seguridad interna, Roberto Ramos Cruz, sólo se limitó a acreditar que tras los incidentes reportados por las empleadas afectadas, la Autoridad puso "vigilancia en el estacionamiento, en la cual [] no identificaron a nadie en el área especificada donde estaban los vehículos de las empleadas, pero que un día vieron a varios empleados en el estacionamiento en horas laborables, entre los que se encontraba Daniel Pagán. [Ello ocurrió] c[e]rca de la hora de salida o ponche y que no los vio cerca de los vehículos de las empleadas". Apéndice, págs. 43-44.

[25] *Véase* Árbitro Jorge Torres Plaza, *Laudo de Arbitraje*, Apéndice, pág. 30. *Véase además* Apéndice, pág. 86. Si bien es cierto que hubo más de una evidencia **presentada**

evidencia que condujo al árbitro a concluir que el despido del quejoso fue justificado fue **sólo una:** el informe pericial de Onofre Jusino y su correspondiente declaración en la vista de arbitraje. Así lo estimó el propio árbitro en el laudo de arbitraje: "El testimonio vertido por el señor Jusino, fue contundente y medular al punto de esclarecer quién fue la persona que envió los anónimos a las empleadas aquí afectadas".[26]

Ante la ausencia de otra prueba que demostrara que en efecto el señor Pagán Restituyo fue el autor de las notas en controversia, es forzoso concluir que en el caso de autos se justificaba la necesidad de solicitar la producción del informe pericial previo a la vista de arbitraje. Según señalamos, la petición de acceso a información previo a un procedimiento de arbitraje no obliga automáticamente a la otra parte a acceder a ello, sino que hay que atenderlo según las circunstancias particulares del caso. *Véase Detriot Edison v. N.L.R.B.,*

---

en la vista de arbitraje, igual de cierto es que **hubo sólo una prueba** que satisficiera la relación de responsabilidad entre el señor Pagán Restituyo y los incidentes con las empleadas: ésta fue el informe pericial. *Id.*

[26] *Id.* pág. 33. El Tribunal de Apelaciones sentenció:

> Tanto el Laudo de arbitraje emitido, como la determinación del tribunal de instancia en la que se confirma la decisión del Árbitro, expresan de forma directa el gran peso que se le adjudicó al testimonio del Sr. Jusino, el cual se basaba en su informe pericial. ... La única prueba que apunta a la culpabilidad del Sr. Pagán es el informe realizado por el Sr. Jusino y su testimonio.

Sentencia del Tribunal de Apelaciones, Apéndice, pág. 134.

440 U.S. 301, 314 (1979). Examinados los hechos que rodean la controversia presente, entendemos que se satisfacen las circunstancias extraordinarias o excepcionales que justificarían la producción de la evidencia solicitada. Como vemos, el requisito de necesidad está estrechamente ligado al de circunstancias extraordinarias y en el caso de autos se satisfacen ambos.

Dado el contexto particularizado de esta controversia, en la etapa de arbitraje no había justificación que sustentara la conclusión del árbitro de no permitir el descubrimiento de la información obtenida por la Autoridad previo a la vista. *Véase* Arbitrator Gabriel N. Alexander, General Motors Umpire Decision No. F-97 (Alexander, 1950) ("There is not a scintilla of justification for the withholding of information by either party from and after the time it is discovered).[27]

Es importante señalar que el hecho de que el árbitro permitiera un breve receso durante la vista con tal de que la Autoridad examinara el informe pericial y pudiera contrainterrogar al perito, no satisface la norma de derecho que acabamos de esbozar. No debemos soslayar que la evidencia en controversia constituye un informe científico (pericial) que requiere mayor detenimiento para examinarlo y conocimiento especializado para

---

[27] Nótese que la exigencia a descubrir el informe pericial en cuestión se limita sólo al procedimiento de arbitraje, mas no se extiende al procedimiento previo e interno de quejas y agravios.

entenderlo, y esto no era posible realizarlo en un corto espacio de tiempo de receso de vista. Es meritorio mencionar que aunque nuestro ordenamiento jurídico faculta el testimonio pericial basado en datos percibidos antes de o durante el juicio o vista, no debemos pasar por alto que en los procedimientos en que aplica dicha norma de las Reglas de Evidencia de Puerto Rico, 32 L.P.R.A. Ap. VI, R. 704, hay un derecho a un descubrimiento de prueba previo al juicio y un deber de descubrimiento continuo, por lo que hay una marcada diferencia con la controversia de autos. Reglas de Procedimiento Civil, Regla 23, 32 L.P.R.A. Ap. V, R. 23; Reglas de Procedimiento Criminal, Reglas 95-95b, 34 L.P.R.A. Ap. II RR 95-95b.

En vista de que a Pagán Restituyo no se le permitió examinar el informe pericial ni le proveyeron copia de las notas o apuntes del perito, minando así la oportunidad de que el querellante presentara un informe pericial en contrario para refutar el habido en manos de la Autoridad, entendemos correcta la conclusión del Tribunal de Apelaciones a los fines de que aunque la Hermandad hubiese contratado un perito, tal "gestión resultaba fútil, pues, el perito contratado no tendría sobre qué documentos emitir su opinión o preparar un informe, similar al que preparó el perito de la parte Recurrida, para refutar el mismo adecuadamente".[28] El hecho de que la evidencia no descubierta fuera de

---

[28] Sentencia del Tribunal de Apelaciones, Apéndice, pág. 134.

índole pericial, contribuye con creces a las circunstancias excepcionales del caso de autos y a la justificación de necesidad por parte de la Hermandad.[29]

Ante un panorama fáctico excepcional como el presente, y en aras de salvaguardar los derechos de las partes a una adjudicación justa y equitativa, procedía facultar el descubrimiento solicitado y aplazar la vista. *Véase* Fernández Quiñonez, *supra*, pág. 267. Mediante dicha orden la Hermandad hubiese tenido la oportunidad de consultar con un perito que evaluara la evidencia en controversia, con tal de prepararse de cara a una vista de arbitraje o de evaluar si procedía continuar con el procedimiento. *Fairweather's Practice and Procedure in Labor Arbitration*, *supra*, pág. 176.

**IV**

Por los fundamentos que se hacen constar aquí, disentimos de la Opinión mayoritaria. Por consiguiente, confirmaríamos la decisión del Tribunal de Apelaciones

---

[29] Es importante hacer hincapié en el carácter pericial y científico de la evidencia no provista y necesaria para una adecuada defensa durante el procedimiento de arbitraje, máxime cuando se carece de otra evidencia que impute la responsabilidad de la persona sujeta del proceso disciplinario. Esa naturaleza de la evidencia no descubierta, además del hecho de que era la única evidencia que imputaba la responsabilidad de Pagán Restituyo, abona a encontrar en la controversia de autos circunstancias extraordinarias que justifiquen la aplicación de la excepción a la norma general en cuanto al descubrimiento de prueba en los procedimientos de arbitraje.

Esa determinación de especial necesidad y circunstancias extraordinarias no puede definirse mediante una norma de aplicación general, sino que le corresponde a los tribunales evaluar y ponderar cada caso dentro del contexto en que se desarrolle cada controversia.

puesto que erró el árbitro al no permitir el descubrimiento de prueba solicitado, por lo que el laudo se emitió en violación del debido proceso de ley de la parte recurrida. Por haber mediado un pacto contractual en que se determina que la controversia será adjudicada por un árbitro, procedería que devolvamos el caso de autos para que el árbitro prosiga según lo establecido en esta Opinión. *Véase United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29 (1987).

                              Anabelle Rodríguez Rodríguez
                                     Juez Asociada